UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

YASEEN KADURA, *et al.*,

                Plaintiffs,                    Civil Case No. 14-13128
                                                        Honorable Linda V. Parker

v.

LORETTA E. LYNCH, *et al.*,

                Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT (ECF NO. 42)

Plaintiffs Dr. Naji Abduljaber, Mr. Abdus Samad Tootla, Mr. Alaa Saade, and Mr. Ahmed Saleh Abusaleh filed this action based on their alleged inclusion in the Terrorist Screening Database. Defendants are Loretta E. Lynch, in her capacity as Attorney General of the United States; James B. Comey, in his official capacity as the Director of the Federal Bureau of Investigation ("FBI"); Christopher M. Piehota, in his official capacity as Director of the Terrorist Screening Center ("TSC"); Jeh Johnson, in his official capacity as the Secretary of the Department of Homeland Security; R. Gil Kerlikowske, in his official capacity as Commissioner of the United States Customs and Border Protection ("CBP"); John S. Pistole, in his official capacity as Administrator of the United States Transportation Security Administration ("TSA"); and John T. Morton, in his official capacity as Director of

the United States Immigration and Customs Enforcement ("ICE") (collectively, "Defendants").  Presently before the Court is Defendants' motion to dismiss Plaintiffs' amended complaint.  (ECF No. 42.)  The parties have fully briefed the motion.  Finding the facts and legal arguments sufficiently presented in the parties' briefs, the Court is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f).  For the reasons that follow, the Court is granting Defendants' motion to dismiss.

## II.     Standard for Motion to Dismiss for Lack of Subject-Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) allows for motions asserting lack of jurisdiction of the subject matter. Fed. R. Civ. P. 12(b)(1).  Where a Rule 12(b)(1) motion contains a factual attack, the court need not construe the allegations in the non-moving party's favor because the burden of proving jurisdiction is on the party asserting it.  Moreover, it is recognized that a party faced with a Rule 12(b)(1) motion to dismiss may not rest on the truth of the facts asserted in its pleadings.  *See Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir.1990) ("[W]hen a court reviews a complaint under a factual attack [on jurisdiction], ... no presumptive truthfulness applies to the factual allegations."); *Exchange Nat'l Bank of Chicago v. Touch Ross & Co.,* 544 F.2d 1126, 1131 (2d Cir.1976) ("[A] party opposing a Rule 12(b)(1) motion cannot rest on the mere assertion that factual issues may exist.").

"When a defendant moves for a motion to dismiss under both Rule 12(b)(1) and (b)(6), the court should consider the 12(b)(1) motion first because the 12(b)(6) motion is moot if subject matter jurisdiction does not exist." *Taylor v. Dep't of Human Servs. of Michigan*, No. 09–CV–14639, 2010 WL 1257347, at *1–2 (E.D.Mich. Mar. 30, 2010) (quoting *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir.1990)).

## III.   Standard for Motion to Dismiss for Failure to State a Claim

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).  Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . .." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* (quoting *Twombly*,

550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption is not applicable to legal conclusions, however. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Ordinarily, the court may not consider matters outside the pleadings when deciding a Rule 12(b)(6) motion to dismiss. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989)). A court that considers such matters must first convert the motion to dismiss to one for summary judgment. *See* Fed. R. Civ. P 12(d). However, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they

4

are referred to in the [c]omplaint and are central to the claims contained therein."

*Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

## IV.   Factual and Procedural Background

Plaintiffs' lawsuit arises out of the federal government's response to

domestic terrorism.  The Terrorist Screening Center ("TSC"), an agency overseen

by the FBI, maintains a list of individuals who are suspected terrorists.  (Amend.

Compl. ¶ 33.)  There are two subsets to the TSC's database: the Selectee List and

the No-Fly List.[1]  (*Id.* at ¶ 28.)  Individuals on the Selectee List are able to fly after

extra screening at airports and border screenings, while individuals on the No-Fly

List are prevented from boarding flights.  (*Id.*)  While the FBI nominates

individuals to the watch list for suspected ties to domestic terrorism, TSC makes

the final determination whether an individual belongs on the list.  (*Id.* at ¶ 50.)  In

determining whether to place an individual on the Selectee List or No-Fly List,

TSC must have "reasonable suspicion requir[ing] articulable facts which, taken

together with rational inferences, reasonably warrant the determination that an

individual is known or suspected to be or has been engaged in conduct constituting,

in preparation for, in and of or related to terrorism and terrorist activities."  (*Id.* at ¶

51.)

---

[1] Plaintiffs refer to the Selectee List and the No-Fly List as "government watch list" or "watch list" in their amended complaint and opposition brief.

The TSC is responsible for disseminating the list of names to other government agencies for their use.  For example, TSC provides their database of names to the Transportation Security Administration ("TSA") to pre-screen passengers.  (*Id.* at ¶ 29; *see also* ECF No. 42 at Pg ID 856.)  Plaintiffs allege that the federal government distributes the names on this database to "state and local authorities, foreign governments, corporations, private contractors, gun sellers, [and] the captains of sea-faring vessels, among others."  (Amend. Compl. ¶ 38.)

Individuals who wish to challenge their placement on the Selectee or No-Fly List may seek redress from TSA's screening program by filing an inquiry with the Department of Homeland Security's Traveler Redress Inquiry Program ("DHS TRIP").  (*Id.* at ¶ 80.)  The DHS TRIP process is the only opportunity for an individual to challenge their placement in the TSC database.  (*Id.* at ¶ 81.)  When an individual challenges their placement, the "TSA, in coordination with the TSC and other appropriate Federal law enforcement or intelligence agencies, if necessary, will review all the documentation and information requested from the individual, correct any erroneous information, and provide the individual with a timely written response."  49 C.F.R. § 1560.205(d).  According to Plaintiffs, the Department of Homeland Security responds "with a standard form letter that neither confirms nor denies the existence of any terrorist watch list records relating to the individual."  (Amend. Compl. ¶ 83.)

Plaintiff Dr. Naji Abduljaber was handcuffed and detained by Customs and Border Protection ("CBP") on July 8, 2007 when he attempted to re-enter the United States through the Ambassador Bridge in Detroit, Michigan.  (*Id.* at ¶ 88.) His detention lasted approximately four hours.  (*Id.* at ¶ 89.)  Plaintiff Abduljaber was again detained at the Detroit Metropolitan Airport on December 13, 2010.  (*Id.* at ¶ 90.)  After his second detention, Plaintiff Abduljaber filed a redress request with DHS TRIP.  (*Id.* at ¶ 93.)  Plaintiff Abduljaber received a response from DHS TRIP on January 5, 2012 that failed to provide any details as to whether he was still on the list.  (*Id.* at ¶ 94.)  As of the filing of the amended complaint, Plaintiff Abduljaber is still subjected to "prolonged searches, detention[,] and questioning, every time he travels by air."  (*Id.* at ¶ 96.)

Plaintiff Abdus Samad Tootla was first subjected to a secondary inspection by CBP at the Detroit Metropolitan Airport on March 18, 2008.  (*Id.* at ¶ 98.) Plaintiff Tootla filed a redress request through DHS TRIP and received a letter similar to Plaintiff Abduljaber's on January 10, 2013.  (*Id.* at ¶¶ 102-03.)  Plaintiff Tootla attempted to fly subsequent to his DHS TRIP redress request on November 12, 2013 and was detained by CBP officers who questioned him in a room.  (*Id.* at ¶¶ 104, 106.)  As of the filing of the amended complaint, Plaintiff Tootla is still subjected to similar treatment every time he travels by air.  (*Id.* at ¶ 108.)

Plaintiff Alaa Saade was first subjected to secondary screening in the summer of 2012 at the Detroit Metropolitan Airport.  (*Id.* at ¶¶ 111-12.)  On May 6, 2013, Plaintiff Saade was on a commercial flight that landed at the Detroit Metropolitan Airport.  (*Id.* at ¶ 117.)  Upon arrival, Plaintiff Saade was escorted by a CBP officer for a secondary inspection that included "prolonged searches, detention and questioning."  (*Id.*)  Two months later, on July 29, 2013, Plaintiff Saade was detained at the Ambassador Bridge in Detroit, Michigan for approximately six hours by CBP after a brief trip to Canada.  (*Id.* at ¶ 115.)  Plaintiff Saade alleges that CBP officers "confiscate his phone and download the data from his phone every time he re-enters the United States at the United States-Canada border and every time he travels by air."  (*Id.* at ¶ 121.)

Plaintiff Saade filed a redress request through DHS TRIP and received a response on October 28, 2013.  (*Id.* at ¶¶ 113-14.)  The response did not confirm or deny the existence of any list and Plaintiff Saade's placement on it.  (*Id.* at ¶ 83.)  As of the filing of this amended complaint, Plaintiff Saade "continues to be subjected to prolonged searches, detention and questioning when re-entering the United States at the United States-Canada border" and every time he travels by air.  (*Id.* at ¶¶ 119-20.)

Plaintiff Ahmed Saleh Abusaleh was first subject to a secondary inspection on February 11, 2004 at the Detroit Metropolitan Airport while attempting to board

a flight.  (*Id.* at ¶ 123.)  Plaintiff Abusaleh filed a redress request through DHS

TRIP and received a response on December 3, 2012.  (*Id.* at ¶¶ 128-29.)  The

response did not confirm or deny the existence of any list and Plaintiff Abusaleh's

placement on it.  (*Id.* at ¶¶ 83, 129.)   Plaintiff Abusaleh was subjected to

secondary inspection again on November 23, 2013 at the Atlanta International

Airport.  (*Id.* at ¶ 131.)  Not only was he removed to a room for secondary

questioning, but a CBP officer asked Plaintiff Abusaleh if he would agree to

further questioning at his home.  (*Id.* at ¶ 133.)  As of the filing of this amended

complaint, Plaintiff Abusaleh continues to face similar treatment every time he

travels by air.  (*Id.* at ¶ 134.)

Plaintiffs filed a six-count amended complaint on March 10, 2016 against

Defendants.  (ECF No. 40.)  On May 9, 2016, Defendants filed a motion to dismiss

Plaintiffs' amended complaint.  (ECF No. 42.)  Plaintiffs filed a response on June

17, 2016 and Defendants' filed a reply on July 8, 2016.  (ECF Nos. 48, 51.)

## V.    Analysis

### A.    Standing

To establish standing, a plaintiff must show that: (1) he has suffered an

injury in fact that is "concrete and particularized" and "actual or imminent"; (2) the

injury is "fairly ... trace[able] to the challenged action of the defendant"; and (3) it

is "likely, as opposed to merely speculative, that the injury will be redressed by a

favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks omitted).

Defendants first argue that this Court should dismiss Plaintiffs' claims because Plaintiffs lack constitutional standing. Defendants contend that Plaintiffs have failed to allege sufficient facts to demonstrate that there is a " 'real and immediate threat' that they will be subjected to the alleged injury of additional security screening in the future." (ECF No. 42 at Pg ID 869.) In particular, Defendants note that the instances of additional screening that led to this suit occurred between February 2004 through 2013. (*Id.*) Defendants rely on *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) in asserting that Plaintiffs' past incidents do not satisfy the standing requirements, because "past exposure to illegal conduct does not in itself show a present case or controversy[.]" *Id.* at 102 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)).

Defendants' reliance on *City of Los Angeles* is misplaced. In *O'Shea*, the Supreme Court stated that past exposure is insufficient to establish a case or controversy "if unaccompanied by any continuing, present adverse effects." *O'Shea*, 414 U.S. 488 at 495-96. Plaintiffs allege in their amended complaint that they were placed on the government watch list. (*See* Amend. Compl. ¶¶ 96, 109, 122, 134.) There is no indication that Plaintiffs' names have been removed from the list. (*See id.*) Plaintiffs also allege that they have all been subject to

10

subsequent secondary inspections up through the filing of the amended complaint. (*See id.* at ¶¶ 96, 108, 120, 134. Further, the relief Plaintiffs request, including removal from the government watch list, would redress their injuries. (*See id.* at Pg ID 682-83.); s*ee also Shearson v. Holder,* 865 F. Supp. 2d 850, 861 (N.D. Ohio 2011), *aff'd,* 725 F.3d 588 (6th Cir. 2013) (holding that erroneous placement of plaintiff's name on government travel watch list was a legally cognizable injury under Article III); *Mohamed v. Holder*, 995 F.Supp.2d 520, 535 (E.D. Va. 2014) (same). Thus, this Court concludes that Plaintiffs have standing.

### B.   Adequacy of DHS TRIP Redress Process

Defendants next argue that any claim by Plaintiffs challenging the adequacy of the DHS TRIP redress process should be dismissed. Defendants rely on the recent decision of the Sixth Circuit in *Mokdad v. Lynch*, 804 F.3d 807 (6th Cir. 2015), which recognized that a challenge to the DHS TRIP redress process was, in effect, a challenge to a TSA order because Congress had specifically directed TSA to establish the redress process. (ECF No. 42 at Pg ID 871.) Further, the *Mokdad* Court acknowledged that 49 U.S.C. § 46110 "makes clear that the federal courts of appeals have exclusive jurisdiction to review the orders of certain federal agencies, including [TSA]." *Mokdad*, 804 F.3d at 809; *see* 49 U.S.C. § 46110 (granting exclusive jurisdiction to the federal courts of appeals to "review" the "order[s]" of agencies including the TSA). Therefore, Defendants argue that Plaintiffs' claims

challenging the DHS TRIP redress process should be dismissed for lack of subject-matter jurisdiction.

The amended complaint suggests a challenge to the DHS TRIP redress process. In Count III, Plaintiffs state that Defendants failed to provide them with a "constitutionally adequate mechanism that affords them notice of the reasons and bases for their placement on the federal watch list and a meaningful opportunity to contest their continued inclusion on the federal watch list." (Amend. Compl. ¶ 158.) However, in their response brief, Plaintiffs contend that they are not challenging a TSA order. Rather, Plaintiffs argue that they are challenging the placement of their names on the watch list. (ECF No. 48 at Pg ID 924 ("Here, Plaintiffs are not so much challenging the adequacy of DHS TRIP as they are challenging their placement on the terrorist watch list.")). Further, Plaintiffs argue this case does not involve a TSA order because "TSC [] placed plaintiffs on the List, and TSC is not an agency covered by Section 46110." *Id.*

This Court recognizes that in *Mokdad*, the Sixth Circuit declined to find whether 49 U.S.C. § 46110 deprived a district court of subject-matter jurisdiction over claims challenging the adequacy of the redress process.[2] Although the issue was avoided, the *Mokdad* Court stated that 49 U.S.C. § 46110 makes "clear that

---

[2] The Court dismissed Mokdad's claim without prejudice because he failed to join a necessary party in his action. *Mokdad*, 804 F.3d at 812.

the federal courts of appeals have exclusive jurisdiction to review the orders of

certain federal agencies, including the TSA:

> [A] person disclosing a substantial interest in an order issued by the
> Secretary of Transportation (or the Under Secretary of Transportation
> for Security with respect to security duties and powers designated to
> be carried out by the Under Secretary or the Administrator of the
> Federal Aviation Administration with respect to aviation duties and
> powers designated to be carried out by the Administrator) in whole or
> in part under this part, part B, or subsection (l) or (s) of section 114
> may apply for review of the order by filing a petition for review in the
> United States Court of Appeals for the District of Columbia Circuit or
> in the court of appeals of the United States for the circuit in which the
> person resides or has its principal place of business.
>
> 49 U.S.C. § 46110."

*Mokdad*, 804 F.3d at 809; *see also Bazzi v. Lynch*, No. 16-10123, 2016 WL

4525240 at *5 (E.D. Mich. Aug. 30, 2016) (finding that the district court lacks

subject-matter jurisdiction over challenges to adequacy of DHS TRIP redress

process pursuant to 49 U.S.C. § 46110(a)).  Any challenge to the DHS TRIP

redress process should be raised with the appropriate appellate court pursuant to 49

U.S.C. § 46110.  This Court finds that it lacks subject matter jurisdiction over any

challenges in Plaintiffs' amended complaint to the adequacy of the DHS TRIP

redress process.

## C.   Procedural Due Process [Count I]

To prevail on a procedural due process claim, a party must establish that it

possessed a constitutionally protected interest, that it was deprived of that interest,

and that the government did not afford it adequate procedural rights prior to depriving it of that interest. *Machisa v. Columbus City Bd. of Educ.*, 563 F. App'x 458, 462 (6th Cir.2014) (citing *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 Fed. Appx. 826, 830 (6th Cir.2009)).

Defendants argue that Plaintiffs' allegation that their Fifth Amendment procedural due process right was violated is without merit. Plaintiffs argue their right to procedural due process was violated when they were not provided "any reason or basis for their placement on the federal watch list and…a meaningful opportunity to challenge their continued inclusion on the federal watch list." (Amend. Compl. ¶ 138.)

In their motion to dismiss, Defendants contend that no protected interest was infringed upon due to the extra screenings or detentions that Plaintiffs faced in the course of travel. According to Defendants, a delay during the course of travel does not constitute a deprivation of the right to travel under the due process clause. (ECF No. 42 at Pg ID 858.) Further, Defendants argue that Plaintiffs fail to satisfy the "stigma plus" test articulated by the Supreme Court, which determines whether alleged reputational harm infringes a liberty interest. (*Id.*) The Court will first discuss the two protected interests Plaintiff alleges were infringed upon by Defendants: (1) freedom of movement and (2) their reputations. (*Id.* at ¶¶ 139-40.)

14

### 1.      Freedom of Movement[3]

The Supreme Court has recognized a right to travel.  *See Saenz v. Roe*, 526

U.S. 489, 500 (1999) (recognizing three components to interstate travel).  The

Sixth Circuit found that government action implicates the right to travel "when it

actually deters travel, when impeding travel is its primary objective, or when it

uses a classification that serves to penalize the exercise of the right."  *League of*

*United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 535 (6th Cir. 2007.)  In

*League of United Am. Citizens*, the Sixth Circuit held that an inconvenience, such

as requiring a party to carry additional personal identification papers, "can hardly

be said to deter or penalize travel.  To the extent this inconvenience burdens

exercise of the right to travel at all, the burden is incidental and negligible,

insufficient to implicate denial of the right to travel."  *Id.*

Other circuits have discussed whether the right to travel is infringed when a

party is not prevented from traveling, but rather faces a hurdle to travel.  The

Second, Fifth, and Ninth Circuits have found that the right to travel does not

guarantee the most convenient form of travel.  *See Town of Southold v. Town of*

---

[3] Plaintiffs' response brief to the motion to dismiss fails to argue that they have "a liberty interest in traveling free from unreasonable burdens within, to, and from the United States" for purposes of establishing a violation of procedural due process. (Amend. Compl. ¶ 139; *see also* ECF No. 48 at 21-26.)  Rather, Plaintiffs' brief focuses on the "freedom of movement" in the context of substantive due process. For purposes of both procedural and substantive due process, the Court will examine whether freedom of movement is a protected liberty interest.

*East Hampton*, 477 F.3d 38, 54 (2d Cir. 2007) ("Travelers do not have a constitutional right to the most convenient form of travel[, and] minor restrictions on travel simply do not amount to the denial of a fundamental right"); *Gilmore v. Gonzales*, 435 F.3d 1125, 1136 (9th Cir. 2006) ("[T]he Constitution does not guarantee the right to travel by any particular form of transportation."); *Cramer v. Skinner*, 931 F.2d 1020, 1031 (5th Cir. 1991) ("Minor restrictions on travel simply do not amount to the denial of a fundamental right that can be upheld only if the Government has a compelling justification."); *City of Houston v. F.A.A.*, 679 F.2d 1184, 1198 (5th Cir. 1982) (stating that passengers do not possess "a constitutional right to the most convenient form of travel").  In cases analogous to the facts here, courts within this district have found that no protected interest is violated where an individual is subject to extra screening or detention.  *See Bazzi v. Lynch*, No. 16-10123, 2016 WL 4525240 *6 (E.D. Mich. Aug. 30, 2016) ("This Court agrees…that delay and inconvenience in travel does not amount to a deprivation of right protected by the due process clause[.]"); *Beydoun v. Holder*, No. 14-cv-13812, 2016 WL 3753561 *5 (E.D. Mich. Feb. 13, 2015) ("[P]laintiff's allegations do not rise to the level of a due process violation, because he alleges that he can still fly after additional screening and has not been deterred from flying").

Plaintiffs focus their discussion on freedom of movement by providing the court with a historical overview of the Constitution's history, including an analysis

of enumerated and unenumerated rights found in the Constitution. (ECF No. 48 at Pg ID 27-32.) The Court acknowledges that the Plaintiffs have and continue to be subjected to "prolonged searches, detention and questioning" when they travel by air or cross the United States-Canadian border. (Amend. Compl. ¶¶ 89, 96, 98, 104, 106, 108, 111, 119-20, 123, 134.) But Plaintiffs have not alleged that they have been unable to travel due to the alleged placement of their names on the watch list. In the amended complaint, each Plaintiff was able to fly despite being subject to secondary screening and/or detention. Plaintiffs attempt to argue that freedom of movement without delay is a protected liberty interest. However, Plaintiffs provide no legal authority that establishes freedom of movement without delay as a fundamental right. This Court agrees with Defendants that Plaintiffs have not sufficiently alleged that the right to travel without delay is a protected interest for due process purposes.

## 2.    Right to Reputation

In Count I, Plaintiffs allege the second liberty interest infringed upon by Defendants is the "right to be free from false government stigmatization as individuals who are 'known or suspected to be' terrorists[.]" (Amend. Compl. ¶ 140.) Defendants argue that Plaintiffs fail to satisfy the "stigma-plus" test created by the Supreme Court to determine whether an alleged reputational harm infringes a liberty interest. (ECF No. 42 at Pg ID 858.)

"[A] person's reputation, good name, honor, and integrity are among the liberty interests protected by the due process clause of the fourteenth amendment." *Quinn v. Shirey*, 293 F.3d 315, 319 (6th Cir. 2002) (quoting *Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir.1989)).  However, damage to reputation alone is insufficient to infringe on an individual's due process rights.  In *Paul v. Davis*, 424 U.S. 693 (1976), the Supreme Court stated that a plaintiff may not recover for damages to his reputation if the alleged defamatory acts did not also result in the deprivation of a constitutionally protected right or interest.  *Id.*  In *Paul*, the Supreme Court found that "[t]he interest in reputation alone which respondent seeks to vindicate…is quite different from the liberty or property [interests] recognized in [the Court's due process jurisprudence]."  *Id.* at 711.  The Supreme Court held that a successful plaintiff must show more than an injury to their reputation; there must also be a deprivation "of a right previously held under state law[.]"  *Id.* at 709.  "A successful plaintiff must therefore show that the state's action both damaged his or her reputation (the stigma) and that it 'deprived [him or her] of a right previously held under state law' (the plus)."  *Doe v. Michigan Dept. of State Police*, 490 F.3d 491, 502 (6th Cir. 2007) (quoting *Paul*, 424 U.S. at 708.)

Plaintiffs argue that their reputation is infringed upon by Defendants' actions. Plaintiffs' boarding passes have included the designation of "SSSS" to indicate they should be subject to additional screening.  (ECF No. 48 at Pg ID 930.)

Plaintiffs also allege their "designation as a 'Known or Suspected Terrorist' is disseminated to screening agencies such as TSA and CBP, '22 foreign governments,' and even 'ship captains' in addition to domestic and international air carriers."  (*Id.*)  Plaintiffs do not go as far as to say that their reputation was infringed upon to the general public.  Rather, Plaintiffs allege that Defendants provided the names in the TSC database to a number of entities, including state and local authorities, corporations, private contractors, and gun sellers.  (Amend. Compl. ¶ 144.)  Plaintiffs do not provide any factual support that they suffered any stigmatization by the disclosure of their names to third parties.

Assuming *arguendo* that Plaintiffs are able to establish the first prong of the stigma-plus test, Plaintiffs have failed to establish the second prong.  Plaintiffs do not allege that they were "deprived of a right previously held under state law."[4] *Doe*, 490 F.3d 491 (6th Cir. 2007) (quoting *Paul*, 424 U.S. at 708.)  Plaintiffs reference how individuals named on the watch list have suffered because of their inclusion, including having their bank accounts closed and being unable to make wire transfers.  (ECF No. 48 at Pg ID 930.)  However, Plaintiffs do not allege that they have had their own bank accounts closed or been unable to make a wire

---

[4] In their opposition brief, Plaintiffs allege that the "plus" factor can be met "so long as such damage flows from injury caused by the defendant to a plaintiff's reputation[.]" *Siegert v. Gilley*, 500 U.S. 226 (1991).  However, Plaintiffs have failed to allege how their reputation was damaged in their amended complaint and brief.

transfer.  Plaintiffs do not plead any facts that show damage to their own reputation as a result of their placement on the watch list or any obstacles they have faced other than secondary screening and detention.  The Court therefore finds that Plaintiffs have not suffered an infringement of their reputation under the due process clause.

### 3. Nonattainder

In Count I, Plaintiffs also state that they "have a liberty interest in nonattainder (ie: the interest against being singled out for punishment without trial)."  (Amend. Compl. ¶ 141.)  Plaintiffs contend their punishments "include, but are not limited to, inability to travel by air and unreasonable burdens placed upon traveling by air to and from the United States, over U.S. air space and at land border crossings, and false association with a list of individuals suspected of terrorism."  (*Id.*)

Plaintiffs fail to adequately plead any punishments they have faced.  The amended complaint does not include any instances where Plaintiffs were prevented from traveling.  Rather, the amended complaint includes allegations of extra screenings and detention.  (*See e.g.*, *id.* at ¶¶ 92, 96, 105, 108, 112, 116, 119, 125.) Plaintiffs also provide no support for their conclusory allegation of "unreasonable burdens" in traveling.  (*Id.* at ¶ 141.)  The amended complaint fails to provide more than "'naked assertions' devoid of 'further factual enhancement'" in arguing that

nonattainder is a liberty interest for due process purposes here.  For the reasons above, the Court dismisses Plaintiffs' Fifth Amendment procedural due process claims.

### D.      Substantive Due Process [Count II]

In Count II of the amended complaint, Plaintiffs raise a substantive due process claim against Defendants for placing Plaintiffs on the watch list.  (*Id.* at ¶¶ 146-55.)  Plaintiffs allege that Defendants' placement of their names on the watch list deprive Plaintiffs of their "liberty interests in travel, freedom from false stigmatization, and nonattainder."  (*Id.* at ¶ 147.)  Plaintiffs go further, arguing that this deprivation is "arbitrary and capricious, shock[s] the conscience, violate[s] the decencies of civilized conduct and are so brutal and offensive that they do not comport with the traditional ideas of fair play and decency."  (*Id.* at ¶ 152.)

The Supreme Court in *Washington v. Glucksberg*, 521 U.S. 702 (1997) recognized that there are two primary features in the substantive due process analysis: (1) protection of fundamental rights and liberties and (2) "a careful description of the asserted fundamental liberty interest."  *Id.* at 720-21 (internal citations omitted).  To qualify as a fundamental right, the right must be "deeply rooted in this Nation's history and tradition" or "implicit in the concept of ordered liberty" such that "neither liberty nor justice would exist if they were sacrificed…."

*Does v. Munoz*, 507 F.3d 961, 964 (6th Cir. 2007) (quoting *Washington*, 521 U.S. at 721).

Plaintiffs again assert that the fundamental right in question here is the freedom of movement.  Again, Plaintiffs do not allege that they have been unable to travel.  Plaintiffs have been able to travel, despite extra screening and detention. For the reasons discussed at length in Section V.C.1., Plaintiffs have not sufficiently alleged that freedom of movement is a protected interest for substantive due process purposes.

### E.    Administrative Procedure Act, 5 U.S.C. §§ 702, 706 [Count III]

In Count III of the amended complaint, Plaintiffs allege that Defendants violated the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702, 706 by denying them "a constitutionally adequate legal mechanism that affords them notice of the reasons and bases for their placement on the federal watch list and a meaningful opportunity to contest their continued inclusion on the federal watch list[.]"  (Amend. Compl. ¶ 158.)

Plaintiffs' APA claim is an attack on the DHS TRIP redress process.  (*See* ECF No. 48 at Pg ID 953.)  For the reasons set forth above in Section V.A., this Court therefore lacks subject matter jurisdiction over any challenges in Plaintiffs' amended complaint to the adequacy of the DHS TRIP redress process.  Therefore, Plaintiffs' APA claim is dismissed for lack of subject-matter jurisdiction.

### F.      Equal Protection [Count IV]

In Count IV of the amended complaint, Plaintiffs allege that their equal protection rights were violated based on their status as Muslim-American travelers. (Amend. Compl. ¶ 161-65.)[5]  In their opposition brief, Plaintiffs note that leaked government documents demonstrate that Defendants' watch list allegedly contains a disproportionate number of Muslims.  (ECF No. 48 at Pg ID 952.)  Defendants respond that Plaintiffs have failed to state more than a "formulaic recitation" of the claim, in violation of *Twombly-Iqbal* standards.  (ECF No. 51 at Pg ID 996.)

"To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.  As we have held, the threshold element of an equal protection claim is disparate treatment; once disparate treatment is shown, the equal protection analysis to be applied is determined by the classification used by government decision-makers."  *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (internal citations and quotation marks omitted); *see also Scarbrough v. Morgan County Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006).

---

[5] As Defendants note in their motion, Plaintiffs' fifth count "is word-for-word the same as their Equal Protection claim."  (ECF No. 42 at Pg ID 890.)  Plaintiffs do not provide any reasons for treating the two counts differently, and thus the Court will treat Count IV and Count V the same.

Plaintiffs allege that they are Muslim-American and have faced extra screenings and detention while traveling due to their religious status. (Amend. Compl. ¶¶ 10-13.) Plaintiffs also direct the Court to documents that "make it clear that Defendants' watch list includes a disproportionate number of Muslims." (ECF No. 48 at Pg ID 952.) That alone is insufficient to satisfy the requisite pleading standards for a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (finding that plaintiff's complaint did not "nudg[e] his claim of purposeful discrimination across the line from conceivable to plausible" when alleging FBI surveilled more Muslims than members of any other religion). Here, Plaintiffs fail to state that similarly situated individuals from different religious background have not been subject to the same treatment by Defendants in their amended complaint. *See Ctr. for Bio-Ethical Reform, Inc.*, 648 F.3d at 379; *see also Nali v. Ekman*, 355 Fed.Appx. 909, 913 (6th Cir.2009) (allegation of discriminatory intent based on race must be "accompanied by some evidence that the people not disciplined were similarly situated and of a different race"). Further, Plaintiffs' allegations in Count IV of the amended complaint amount to "[t]hreadbare recitals of the elements" of equal protection. The Court finds this insufficient and therefore dismisses Plaintiffs' equal protection claim.

### G.    Non-Delegation

Plaintiffs' last count alleges that Defendants' violated the non-delegation doctrine because Congress allegedly failed to "provide[] the Executive Branch with intelligible principles from which the Executive can implement its watch list schemes regarding civil aviation and national security."  (Amend. Compl. ¶ 173.) In particular, Plaintiffs argue that the statute authorizing TSA to act "provides no guidance as to when Defendants should list a person."  (ECF No. 48 at Pg ID 957.) Further, Plaintiffs contend there is no statutory authority for the dissemination of names included in the TSC database.  (*Id.*)  Defendants contend that the statutory scheme underlying the creation of their Selectee List and No-Fly List meet the "intelligible principle" test requirements.

The non-delegation doctrine prevents Congress from delegating its legislative power to another branch of government.  *Mistretta v. United States*, 488 U.S. 361, 371 (1989).  Congress is allowed to request assistance from other branches.  *Id.* at 372.  "[Congress] must provide an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform."  *United States v. Lawrence*, 735 F.3d 385, 419 (6th Cir. 2013) (quoting *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409, (1928)) (internal quotation marks omitted)).  To pass the "intelligible principle" test, Congress must "clearly delineate[] the general policy, the public agency which is to apply it, and

the boundaries of this delegated authority."  *Mistretta*, 488 U.S. at 372-73 (quoting

*Am. Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946).  The Supreme Court has

invalidated a statute on non-delegation grounds only twice in our nation's history,

doing so for the first and last time in 1935.  *See Panama Ref. Co. v. Ryan*, 293 U.S.

388 (1935); *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935).

In the Court's words, it has "almost never felt qualified to second-guess Congress

regarding the permissible degree of policy judgment that can be left to those

executing or applying the law."  *Am. Trucking Assns., Inc. v. Whitman*, 531 U.S.

457, 474-75 (2001) (internal quotation omitted).

　　　　Congress authorized TSA with overseeing airline security in 49 U.S.C. §

114(d):

> (d) Functions.—The Under Secretary [of TSA] shall be responsible
> for security in all modes of transportation, including—
> > (1) carrying out chapter 449, relating to civil aviation security,
> > and related research and development activities; and
> > (2) security responsibilities over other modes of transportation
> > that are exercised by the Department of Transportation.

In 49 U.S.C. § 44904, Congress authorized TSA and the FBI to jointly "assess

current and potential threats to the domestic air transportation system."  49 U.S.C.

§ 44904(a).  This provision provides more guidance in assessing threats:

> The assessment shall include consideration of the extent to which
> there are individuals with the capability and intent to carry out
> terrorist or related unlawful acts against that system and the ways in
> which those individuals might carry out those acts. The Under
> Secretary and the Director jointly shall decide on and carry out the

26

most effective method for continuous analysis and monitoring of
security threats to that system.

*Id.*

Plaintiffs contend that Congress is required to provide "guidance as to when
Defendants should list a person" in order to satisfy the "intelligible principle"
requirement.  (ECF No. 48 at Pg ID 957.)  However, the Supreme Court has not
held that Congress needs to provide detailed guidelines—Congress need only
"delinate[] the *general* policy."  *Mistretta*, 488 U.S. at 372-73 (emphasis added).

Further, the two cases Plaintiffs rely on do not engage in the intelligible
principle analysis.  *Indus. Union Dep't, AFL-CIO v. Am. Petroleum Inst.*, 448 U.S.
607 (1980); *Kent v. Dulles*, 357 U.S. 116 (1958).  Therefore, this Court is
dismissing Count VI for failure to state a claim.

## VI.   Conclusion

For all of the above reasons, the Court finds that Plaintiffs fail to state a
viable claim for the relief sought in their amended complaint.  Therefore, the Court
is granting Defendants' motion to dismiss Plaintiffs' amended complaint.

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss Plaintiffs' Amended

Complaint (ECF No. 42) is **GRANTED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: March 8, 2017

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, March 8, 2017, by electronic and/or U.S. First Class mail.

s/ Richard Loury
Case Manager

28